IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| USAMA AHMED, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| vs. | : | NO.   20-cv-01425 |
| | : | |
| KILOLO KIJAKAZI,[1] | : | |
| Commissioner of Social Security, | : | |
| Defendant. | : | |

### MEMORANDUM OPINION

**LYNNE A. SITARSKI**
**UNITED STATES MAGISTRATE JUDGE**                                            September 27, 2021

Plaintiff, Usama Ahmed, brought this action seeking review of the Commissioner of Social Security Administration's decision denying his claim for disability insurance benefits (DIB) and Supplemental Security Income (SSI) benefits under Titles II and XCI of the Social Security Act, 42. U.S.C. §§ 401–33, 1381–83 (the Act).  This matter is before me for disposition upon consent of the parties.  For the reasons set forth below, Plaintiff's Request for Review (ECF No. 13) is **GRANTED**, and the matter is remanded for further proceedings consistent with this memorandum.

### I.   PROCEDURAL HISTORY

Plaintiff filed an application for DIB and SSI alleging disability since March 20, 2016. (R. 210).  Plaintiff alleged that he was unable to work due to back pain, bilateral carpal tunnel, diabetes, retinopathy, diabetic neuropathy in his extremities, and chronic headaches.  *Id.*

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi has been substituted for Andrew Saul as the Defendant in this case.

Plaintiff's application was denied at the initial level, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ).  The administrative hearing was held on March 8, 2018, and the ALJ issued a decision unfavorable to Plaintiff on May 14, 2018.  (R. 81, 84).

Plaintiff appealed the ALJ's decision, and the Appeals Council granted his request for review in order to consider a medical source statement from a treatment provider that the ALJ had failed to consider.  (R. 185–86).  On February 10, 2020, the Appeals Council issued a decision unfavorable to Plaintiff.  (R. 1–10).

Plaintiff filed a complaint with this Court on March 13, 2020.  (Compl., ECF No. 1).  The case was initially assigned to the Honorable Judge Linda K. Caracappa for disposition.  (ECF No. 2).  On October 14, 2020, Plaintiff filed a Brief and Statement of Issues in Support of Request for Review.  (Pl.'s Br., ECF No. 13).  On October 29, 2020, the Commissioner filed a Response, and Plaintiff filed a Reply on October 30, 2020.  (Resp., ECF No. 14; Reply, ECF No. 15).  On May 18, 2021, the case was reassigned to me, and the parties consented to my jurisdiction.  (Order, ECF No. 16; Consent, ECF No. 18).

## II.   FACTUAL BACKGROUND

The Court has considered the administrative record in its entirety and summarizes here the evidence relevant to the instant request for review.

Plaintiff was born on November 24, 1965 and was fifty years old on the alleged disability onset date.  (R. 22, 94).  He graduated from college in Egypt before moving to the United States.  (R. 23).  Plaintiff previously worked as a cook.  (R. 93).

### A.   Medical Evidence

Plaintiff was diagnosed with uncontrolled Type 2 diabetes in 1999.  (R. 402).  In March

2012, Plaintiff began treatment with Dr. Wael Yacoub, M.D., who assessed him to have diabetes mellitus, adult onset, uncontrolled. (R. 72). CRNP Cynthia A. Payonk with Lehigh Valley Physician Group (LVPG) Endocrinology noted that Plaintiff had been placed on an insulin pump, had stopped using it in 2015, and was ready to restart it in 2016. (R. 522). During this visit, Plaintiff reported experiencing weakness, chest pain, and shortness of breath. *Id.* CRNP Payonk noted that Plaintiff was well-appearing, in no acute distress, with no thyroid enlargement and no cervical lymphadenopathy, and his extremities were benign without edema. (R. 524).

Plaintiff treated with LVPG Orthopedics for his low back pain from 2015 to 2017. (R. 241–98, 326–34, 374–77, 746–99). Physical examinations by Dr. Joshua S. Krassen, D.O. and Dr. Thomas DiBenedetto, M.D. routinely showed that Plaintiff exhibited functional cervical range of motion without pain, and functional lumbar range of motion with some discomfort or pain on the right. (R. 752–56). On April 4, 2016, Dr. DiBenedetto examined Plaintiff and noted full motion of both hands, positive Tinel's and Phalen's signs, and positive Tinel's over the cubital tunnel. (R. 374). Based on these findings, he ordered an EMG study. *Id.* On October 17, 2016, Dr. Krassen reported that the EMG performed on Plaintiff's right upper extremity revealed that his right median and ulnar motor conduction and sensory responses were within normal limits. (R. 754). The EMG also revealed that Plaintiff's right median and ulnar F-wave responses were normal, and there was no electrophysiological evidence of any peripheral entrapment neuropathy or cervical radiculopathy. *Id.* In a follow-up on October 24, 2016, Dr. DiBenedetto reported that Plaintiff's EMG was negative, that he had full painless range of motion in his shoulders, normal rotator cuff strength testing, and a normal neurovascular exam. (R. 753). Later examinations also showed negative Tinel's and O'Brien's signs, and Plaintiff was noted as being in no acute distress. (R. 753–54).

On March 21, 2016, Plaintiff was treated at Progressive Vision Institute for a stabbing pain in both eyes, as well as itching and burning and worsening vision. (R. 342). Dr. Julie Snyder assessed Plaintiff as having dry eye syndrome, diabetic macular edema, and cataract nuclear sclerosis. (R. 345). On January 30, 2017, Plaintiff again treated at Progressive vision for cataract evaluation. (R. 701). He reported having difficulty reading fine print, and was assessed as having cataracts in both eyes and keratoconjunctivitis sicca. (R. 701–02).

From February 2016 through April 2016, Plaintiff presented to Dr. Wael Yacoub for routine treatment of his hypertension, hyperlipidemia, and diabetes mellitus. (R. 379–99). During a physical examination on April 19, 2016, Dr. Yacoub found lumbar tenderness and a moderate reduction in Plaintiff's range of motion. (R. 390). Dr. Yacoub did not note any objective abnormalities in Plaintiff's upper extremities, but did note Plaintiff's plan to address his carpal tunnel syndrome via surgery. (R. 390–91).

On April 27, 2016, Dr. Yacoub completed a medical source statement of Plaintiff's ability to do work-related activities. (R. 800–08). In the statement, Dr. Yacoub found Plaintiff capable of occasionally lifting or carrying up to twenty pounds, and gave the basis for his findings as "chronic back pain" and "carpal tunnel." (R. 802). Dr. Yacoub found Plaintiff capable of siting for two hours at one time, standing for thirty minutes, and walking for thirty minutes. (R. 803). He found Plaintiff capable of sitting for six hours out of an eight-hour workday, standing for one hour, and walking for one hour. *Id.* Dr. Yacoub found that Plaintiff capable of frequent reaching and occasional handling, fingering, feeling, pushing, and pulling, and gave the basis for his findings as "carpal tunnel." (R. 804). He found that Plaintiff could occasionally operate foot controls. *Id.* Dr. Yacoub also found Plaintiff capable of occasionally climbing stairs and ramps, climbing ladders or scaffolds, and balancing, but that he could never

4

stoop, kneel, crouch, or crawl.  (R. 805).  He gave the reason for this finding as "back pain." *Id.* Regarding Plaintiff's vision, Dr. Yacoub found that Plaintiff was able to avoid ordinary hazards in the workplace, read ordinary newspaper or book print, view a computer screen, and determine differences in shape and color of small objects, but that he could not read very small print. *Id.* Dr. Yacoub assessed Plaintiff's environmental limitations, and found that Plaintiff could be occasionally exposed to moving mechanical parts, operating a motor vehicle, humidity and wetness, and dust, odors, fumes, and pulmonary irritants, but never unprotected heights, extreme cold, extreme heat, or vibrations.  (R. 806).  He also found that Plaintiff could only be exposed to moderate noise.  *Id.*  Finally, Dr. Yacoub found Plaintiff capable of performing activities like shopping, travelling alone, ambulating without assistance, walking a block at a reasonable pace on rough or uneven surfaces, using standard public transportation, climbing a few steps at a reasonable pace with the use of a single hand rail, preparing food, caring for personal hygiene, and sorting, handling, and using paper or files.  (R. 807).

On March 6, 2017, Plaintiff treated with LVPG Neurology for severe headaches.  (R. 659).  A neurologic exam revealed that Plaintiff was oriented to person, place, and time, had normal attention and concentration, and no occipital nerve tenderness.  (R. 660).  Plaintiff also exhibited 5/5 strength, normal gait, and normal coordination.  (R. 661–62).

On January 30, 2017, Plaintiff consulted with Dr. Susan S. Kim, M.D., reporting chronic pain in his hands, weakness in grip, and cramping and locking of all digits. *Id.*  On examination, Dr. Kim found that Plaintiff had grossly intact sensation and strength, negative Tinel's & Phalen's signs, and decreased grip strength.  (R. 787).  She found a very small left foraminal protrusion at L3-4 with very minimal neural foraminal stenosis on the left side, and a minimal disc bulge at L4-5.  (R. 789).  Dr. Kim found a low likelihood of rheumatoid arthritis in

Plaintiff's hands, but instead suspected predominately use-related arthropathy/tendinopathy superimposed with msk/neuropathic complications due to Plaintiff's uncontrolled diabetes. *Id.*

  **B.**  **Non-Medical Evidence**

  As part of his application for disability benefits, Plaintiff completed an adult function report on June 20, 2016. (R. 222–30). In the report, he stated that he didn't do much on a typical day, and didn't go out much further than the pharmacy and to see doctors. (R. 224). Plaintiff also stated that he woke up frequently while trying to sleep and was always tired, and that his trouble using his hands affected his ability to dress, bathe, care for his hair, and shave. *Id.* He stated that he did not prepare his own meals because he couldn't use his hands too much and couldn't stand for too long. (R. 225). He stated that he was able to drive on his own and handle money, but that he had no hobbies or activities besides watching TV once or twice a day for an hour and going to mosque once a week. (R. 226–27). Regarding his abilities, Plaintiff stated that his conditions affected his ability to lift, squat, bend, stand, reach, walk, sit, kneel, hear, climb stairs, complete tasks, concentrate, use his hands, and get along with others. (R. 228). He stated that he could walk for one block before needing to rest, and that he could pay attention for about fifteen minutes before starting to get dizzy and experiencing headaches. *Id.*

  At the March 8, 2018 administrative hearing, Plaintiff testified that he was unable to work due to pain in his back, neck, and legs. (R. 24). He also stated that his medications caused him to be drowsy all the time, and that he was seeing a neurologist for chronic headaches. (R. 24–25). At the hearing Plaintiff wore braces on his hands, which he stated were to help with his carpal tunnel syndrome. (R. 27). Plaintiff testified that he had received injections for his back pain in the past, but that they did not help for more than a couple of weeks. (R. 28). Plaintiff also testified that his uncontrolled diabetes caused symptoms such as shaking, high heartrate,

blurry vision, headaches, and falls.  (R. 28).

### III.   APPEALS COUNCIL'S DECISION

After reopening the record, the Appeals Council issued a decision on February 10, 2020 in which it made the following findings:

1. The claimant met the special earnings requirements of the Act on March 20, 2016, the date the claimant stated he became unable to work and met them through March 31, 2018.  The claimant has not engaged in substantial gainful activity since March 20, 2016.

2. The claimant has the following severe impairments: diabetes mellitus with neuropathy retinopathy, and hyperglycemia; diabetic macular edema; bilateral carpal tunnel syndrome; bilateral cubital tunnel syndrome; bilateral hammer toes of the feet; sciatica with leg pain; and lumbar disc bulge with radiculopathy.  The claimant does not have an impairment or combination of impairments listed in, or medically equal to an impairment listed in, 20 CFR Part 404, Subpart P, Appendix 1.  Listings considered include 1.02, 1.04, 9.00, 11.00, 2.00, and SSR 14-2p (diabetes).

3. The claimant's combination of impairments results in the following limitations on his ability to perform work-related activities: claimant has the residual functional capacity to perform light work, as defined in 20 CFR 404.1567(b) and 416.967(b), except the claimant can occasionally push or pull or operate foot controls with both lower extremities.  The claimant can frequently operate hand controls, reach, handle, finger, and feel with both upper extremities.  The claimant can

   occasionally kneel, crouch, stoop, balance, and crawl, and can occasionally climb stairs and ramps.  The claimant can never climb ladders, ropes and scaffolds, and can never be exposed to unprotected heights and moving mechanical parts.  The claimant can tolerate occasional exposure to extreme cold and vibration.  The claimant has limited far acuity, however, he retains the field of vision to avoid ordinary hazards in the work place.  He also has sufficient visual acuity to handle large and small objects and to read small print.  The claimant can never be exposed to strobe lights, to flashing lights or to bright lights, such as those found on a theatre stage.  The claimant requires a moderate noise work environment, as defined in the Dictionary of Occupational Titles (DOT) and Selected Characteristics of Occupations (SCO).  In addition, the claimant is able to understand, carry-out, and remember simple instructions, and make simple work related decisions.  The claimant will be off task five percent (5%) of the workday.  In view of the above limitations, the claimant has the residual functional capacity to perform a reduced range of the light exertional level.

4. The claimant's alleged symptoms are not consistent with and supported by the evidence of record for the reasons identified in the Administrative Law Judge's decision.

5. The claimant is unable to perform past relevant work as a cook because the medium exertional demands exceed his residual functional capacity.

6. The claimant was 52 years old on the date of the Administrative Law Judge's decision, which is defined as an individual closely approaching advanced age. The claimant has a high school education and is able to communicate in English.

>  The claimant's past relevant work is skilled. The issue of transferability of work skills is not material in view of the claimant's age and residual functional capacity.
>
> 7. If the claimant had the capacity to perform the full range of the light exertional level, 20 CFR 404.1569 and 416.969 and Rules 202.21 and 202.14, Table No. 2 of 20 CFR Part 404, Subpart P, Appendix 2, would direct a conclusion of not disabled. Although the claimant's exertional and non-exertional impairments do not allow him to perform the full range of the light exertional level, using the above-cited Rule as a framework for decision-making, there are a significant number of jobs in the national economy that he could perform.
>
> 8. The claimant was not disabled as defined in the Social Security Act at any time through May 14, 2018, the date of the Administrative Law Judge's decision.

(R. 6–7). Accordingly, the Appeals Council found Plaintiff was not entitled to disability benefits. (R. 8).

### IV.   LEGAL STANDARD

To be eligible for Social Security benefits under the Act, a claimant must demonstrate to the Commissioner that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 1382c(a)(3)(A). A five-step sequential analysis is used to evaluate a disability claim:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, then the Commissioner considers in the second step whether the claimant has a "severe impairment" that significantly limits his physical or

9

>mental ability to perform basic work activities. If the claimant suffers a severe impairment, the third inquiry is whether, based on the medical evidence, the impairment meets the criteria of the impairment listed in the "listing of impairments," . . . which result in a presumption of disability, or whether the claimant retains the capacity to work. If the impairment does not meet the criteria for a listed impairment, then the Commissioner assesses in the fourth step whether, despite the severe impairment, the claimant has the residual functional capacity to perform his past work. If the claimant cannot perform his past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

*Sykes v. Apfel*, 228 F.3d 259, 262-63 (3d Cir. 2000); *see also* 20 C.F.R. § 416.920(a)(4). The disability claimant bears the burden of establishing steps one through four. If the claimant is determined to be unable to resume previous employment, the burden shifts to the Commissioner at step five to establish that, given the claimant's age, education, work experience, and mental and physical limitations, he is able to perform substantial gainful activities in jobs existing in the national economy. *Poulos v. Comm'r. of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007).

A district court may review "any final decision of the Commissioner." 42 U.S.C. § 405(g). If the Appeals Council grants a claimant's request for review and issues its own decision, that becomes the Commissioner's final decision. *Stevens v. Astrue*, 2008 WL 4748178, at *6 (W.D. Pa. 2008). Judicial review of a final decision of the Commissioner is limited. A district court is bound by the factual findings of the Commissioner if they are supported by substantial evidence and decided according to correct legal standards. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence is "more than a mere scintilla," and "such relevant evidence as a reasonable mind might accept as adequate." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118 (3d Cir. 2000) (citations omitted). Even if the record could support a contrary conclusion, the decision of the Commissioner will not be overruled as long as there is substantial evidence to support it. *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986). The

court has plenary review of legal issues. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999).

V. **DISCUSSION**

In Plaintiff's sole claim for relief, he argues that the Appeals Council erred by failing to give controlling weight to the opinion of Plaintiff's treating physician Dr. Wael Yacoub. (Pl.'s Br., ECF No. 13, at 2–8). Plaintiff argues that, because there was no consultative examination and no other medical opinions contrary to Dr. Yacoub's, the Appeals Council improperly used its lay interpretation of the medical evidence to reject Dr. Yacoub's opinion. *Id.* at 7–8; Reply, ECF No. 15, at 1–2. In response, the Commissioner argues that the RFC determination is reserved to the Commissioner, and that the regulations do not require the Commissioner to rely on a physician's opinion in determining the RFC. (Resp., ECF No. 14, at 8–9).

It is well-settled that the decisionmaker for the Commissioner—in this case, the Appeals Council—must consider all relevant evidence when determining a claimant's RFC, including "medical records, observations made during formal medical examinations, descriptions of limitations by the claimant and others, and observations of the claimant's limitations by others." *Fargnoli v. Massanari*, 247 F.3d 34, 41 (3d Cir. 2001). Treating medical source's opinions are generally entitled to controlling weight, or at least substantial weight. *See, e.g.*, *Fargnoli*, 247 F.3d at 43. "While '[t]reating physicians' reports should be accorded great weight, the opinion of a treating physician does not bind the Commissioner on the issue of functional capacity." *See Colvin v. Comm'r Soc. Sec.*, No. 16-2213, 2017 WL 203372, at *2 (3d Cir. Jan. 18, 2017) (citations omitted). However, "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of

11

the claimant." *Biller v. Acting Com'r of Soc. Sec.*, 962 F.Supp.2d 761, 778–79 (W.D. Pa. 2013) (quoting *Gormont v. Astrue*, No. 11-2145, 2013 WL 791455 at *7 (M.D. Pa. 2013)). The Commissioner may not make "speculative inferences from medical reports" or reject a treating physician's opinion based on his or her own lay interpretation of the raw medical evidence. *Morales v. Apfel*, 225 F.3d 310, 317–18 (3d Cir. 2000).

Here, the Appeals Council granted Plaintiff's request for review of the ALJ's decision because Dr. Yacoub's medical source statement was submitted into the record but was not marked as an exhibit, and thus was not considered by the ALJ. (R. 185–86). The Appeals Council considered Dr. Yacoub's opinion but found that it did not change the findings and conclusions of the ALJ, and thereafter issued a corrective unfavorable decision adopting the ALJ's finding that Plaintiff was not disabled. (R. 186). Plaintiff argues that the Appeals Council improperly based its rejection of Dr. Yacoub's opinion on its own lay re-interpretation of the medical evidence. (Pl.'s Br., ECF No. 13, at 6–9; Reply, ECF No. 15, at 1–2). The Appeals Council gave the following explanation for its decision to afford Dr. Yacoub's opinion no weight:

> According to Dr. Yacoub, [Plaintiff's] exertional and manipulative limitations are based on "back pain" and "carpal tunnel syndrome." Those brief explanations lack supporting details, and are beyond the scope of Dr. Yacoub's routine treatment of [Plaintiff's] hypertension, hyperlipidemia, and diabetes mellitus. Moreover, Dr. Yacoub's treatment notes do not support the extreme limitations assessed in his opinion. For example, Dr. Yacoub only monitored [Plaintiff's] musculoskeletal complaints, with the only abnormal examination findings limited to lumbar tenderness and moderate reduction in range of motion. Although Dr. Yacoub noted [Plaintiff's] plan to address his carpal tunnel syndrome via surgery, his examinations did not reveal any objective abnormalities in [Plaintiff's] upper extremities. Finally, Dr. Yacoub's opinion is inconsistent with other evidence in the record, including a focused neurological examination in March 2017, during which [Plaintiff] exhibited normal strength, gait, coordination, and range of motion.

(R. 5) (record citations omitted). The Appeals Council went on to affirm and adopt the ALJ's RFC determination, finding Plaintiff capable of light work with a number of exceptions related to his diabetes, low back pain, and carpal tunnel syndrome. *Id.*

In this case, no consultative examination was ordered, and no medical professional aside from Dr. Yacoub opined as to Plaintiff's functional limitations or ability to work.[2] This makes Dr. Yacoub's treating source opinion the only medical opinion in the record.

The Commissioner is not bound to follow a treating physician's opinion in determining a claimant's RFC. *Brown v. Astrue*, 649 F.3d 193, 197 n.2 (3d Cir. 2011). However, when rejecting a treating physician's opinion, the Commissioner is required to support his or her RFC determination with objective medical evidence in the record that addresses the claimant's functional capacities. *Miller v. Saul*, 2020 WL 3498136, at *4 (E.D. Pa. 2020) (citing *Hartman v. Colvin*, 2014 WL 1784084, at *8 (W.D. Pa. 2014)). An RFC determination can only "rarely" be made without the opinion of a physician because the Appeals Council are not medical professionals and therefore cannot make medical conclusions. *Biller*, 962 F.Supp.2d at 778–79; *Doak v. Heckler*, 790 F.2d 26 (3d Cir. 1986) (overturning an ALJ's RFC finding where there was no medical opinion to corroborate the ALJ's determination of Plaintiff's functional capacity). The Commissioner may not "interpret raw medical data when evaluating a claimant's functional capacity" because this constitutes an improper substitution of his or her lay judgment for that of the treating physician. *Donat v. Berryhill*, 2018 WL 3186953, at *4 (E.D. Pa. 2018) (citing

---

[2] In his decision, the ALJ gave significant weight to the opinion of Dr. Luo that Plaintiff's visual condition was moderate. (R. 93). However, this opinion pertains only to Plaintiff's visual impairments and not his overall function or ability to work. Further, Plaintiff does not presently contest any of the ALJ's—and by extension, the Appeals Council's—findings regarding Plaintiff's visual impairments.

*Phillips v. Berryhill*, 2017 WL 2224931 at *4 (E.D. Pa. 2017)); *Van Horn v. Schweiker*, 717 F.2d 871, 874 (3d Cir. 1983) ("[A]n ALJ is not free to set his own expertise against that of physicians who present competent medical evidence.") (quoting *Fowler v. Califano*, 596 F.2d 600, 603 (3d Cir. 1979)).

Here, because Dr. Yacoub's opinion was not initially entered as an exhibit, the ALJ determined Plaintiff's RFC based solely on his own review of the objective medical evidence. (R. 88–93). The ALJ stated that Plaintiff's medical records showed only conservative treatment for his back pain and carpal tunnel syndrome, relying on the treatment records of Plaintiff's orthopedists and rheumatologist. (R. 90–91). The ALJ also found that an EMG study of Plaintiff's right upper extremity "indicated that the right median and ulnar motor conduction responses were within normal limits throughout," and that an MRI examination of his lower back "showed mild straightening of lumbar lordosis." *Id*. After reviewing the case on appeal, the Appeals Council adopted the ALJ's RFC determination with no changes. (R. 5). It found Dr. Yacoub's opinion to be inconsistent with his own treatment notes, which did not reveal any objective abnormalities in Plaintiff's upper extremities, as well as a neurological examination in which Plaintiff exhibited normal strength, gait, coordination, and range of motion. *Id.*

However, the medical records also reflect that Plaintiff frequently presented with pain in his right lower back, and on examination by Dr. Yacoub displayed lumbar tenderness and a moderate reduction in his range of motion. (R. 390, 752–56). Plaintiff's rheumatologist, Dr. Kim, also noted that Plaintiff reported chronic pain in his hands, and her examination found decreased grip strength. (R. 787). Plaintiff was prescribed medication and received at least one epidural injection to manage his pain, though he did not undergo any further injections due to possible complications with his diabetes. (R. 377, 418).

While the Appeals Council concludes that the neurologist's examination findings conflict with Dr. Yacoub's opinion, interpreting the impact of these findings on Plaintiff's ability to function or work ultimately requires medical expertise. *See Miller*, 2020 WL 3498136 at *5. Discounting Dr. Yacoub's treating source opinion—the only medical opinion evidence in the record—leaves the Appeals Council without sufficient corroborating evidence that Plaintiff's carpal tunnel syndrome, diabetic neuropathy, and lumbar disc bulge with radiculopathy do not cause the type of pain Plaintiff claims and inhibit his ability to perform light work with the restrictions assessed by the ALJ. Because of this, substantial evidence does not support the Appeals Council's decision, and remand is appropriate.

## VI.   CONCLUSION

For the foregoing reasons, I find that the Appeals Council erred by affording no weight to Dr. Yacoub's medical opinion in the absence of any medical opinion to the contrary, thereby substituting its lay judgment for that of Plaintiff's treating physician. Accordingly, Plaintiff's request for review is **GRANTED** to the extent that it requests remand. This matter is remanded to the Commissioner for further proceedings.

BY THE COURT:

　/s/ Lynne A. Sitarski　　
LYNNE A. SITARSKI
United States Magistrate Judge